## A02A1706. PARKING DECK, LLC v. ANVIL CORPORATION.

(576 SE2d 24)

Barnes, Judge.

Parking Deck, LLC filed a declaratory judgment action against Anvil Corporation, seeking a ruling that Anvil had no easement rights in a parking deck located behind a building Anvil owned. Anvil answered and counterclaimed for a declaratory judgment that it had such an easement. After both parties moved for summary judgment, the trial court denied Parking Deck's motion and granted Anvil's. For the reasons that follow, we affirm.

In 1996, John Marshall Law School purchased two buildings, 1422 and 1430 West Peachtree Street, along with a parking deck located behind the buildings. The two buildings share a common driveway, loading dock, and basement. The school then entered into a purchase agreement to sell Anvil the 1430 building and easement rights in the parking deck property. Anvil alleges that John Marshall delivered the limited warranty deed and promissory notes and Anvil took possession of the building in October 1996. Later in 1997, the school offered the property for sale again, asserting that because the closing was not finalized and the deed was not recorded, it still owned the property. Anvil then sued John Marshall, seeking a declaratory judgment that the sale had been consummated as well as seeking possession of the limited warranty deed that John Marshall had reacquired.

While this first lawsuit was pending between John Marshall and Anvil over ownership to 1430, John Marshall conveyed the parking

deck to a limited liability company, Parking Deck, LLC, whose sole member was John Marshall. The school also "conveyed" to Fourteen Thirty, LLC, a limited liability company whose sole member was also John Marshall, the 1430 property along with an easement to parking spaces in the deck that was valid as long as Fourteen Thirty owned the property. Subsequently, an entity called B2, LLC purchased all of John Marshall's membership rights in Parking Deck, LLC.

The jury in Anvil's suit against John Marshall determined that Anvil was the rightful owner of the property, and the trial court's October 2000 judgment decreed that title had passed to Anvil on October 1, 1996. The judgment also ordered John Marshall to deliver the property deed to Anvil. A month later, the parties entered into a mutual agreement regarding the building financing and releasing each other from further liability. The agreement specified that Anvil was not releasing any claims against Parking Deck, LLC, among others. Significantly, the penultimate paragraph of this agreement excepts the limited warranty deed and the Purchase and Sale Agreement of September 19, 1996, from the document's merger clause.

In May 2001, six months after the judgment and agreement were entered between John Marshall and Anvil regarding the sale of the 1430 building, Parking Deck sued Anvil, seeking a declaratory judgment that Anvil had no easement rights in the deck. Anvil answered and counterclaimed, seeking a declaratory judgment that the Reciprocal Easement Agreement between it and John Marshall is binding and enforceable against Parking Deck and any subsequent owners of the deck.

Anvil moved for summary judgment. Parking Deck also moved for summary judgment, arguing (1) it was a bona fide purchaser who bought the deck with no knowledge of Anvil's purported easement, and (2) Anvil's claim to an easement was barred by res judicata.

In granting summary judgment to Anvil and denying it to Parking Deck, the trial court held that Parking Deck took title to the lot with full knowledge of Anvil's easement rights, and that Anvil's easement rights were established by the prior litigation between John Marshall and Anvil. On appeal, Parking Deck no longer argues it was a bona fide purchaser with no knowledge of Anvil's claim, but argues that the trial court erred in failing to find that Anvil's claim is res judicata and in misinterpreting the judgment in the previous litigation between John Marshall and Anvil.

1.

On appeal, we review the trial court's grant of summary judgment de novo to determine whether the evidence . . . , viewed in [the] light most favorable to the nonmoving party, demonstrates [a] genuine issue of material fact. Summary

judgment is proper only when . . . no . . . issue of material fact [exists] and the moving party is entitled to judgment as a matter of law.

(Footnotes omitted.) *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745 (548 SE2d 646) (2001).

2. Parking Deck contends that the easement issue is res judicata, because Anvil could have raised it in its earlier suit against John Marshall seeking the deed to the 1430 property. OCGA § 9-12-40 provides that "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." "This [statute] is a codification of Georgia's basic common law rule of res judicata. However, for one action to act as a bar to a subsequent action, the two actions must share certain characteristics. First, the parties to the two actions must be identical and, second, the subject matter of the actions must also be identical." *Lawson v. Watkins*, 261 Ga. 147, 148-149 (1) (401 SE2d 719) (1991).

Further,

[i]t is well established that a former judgment binds only as to the facts in issue and events existing at the time of such judgment, and does not prevent a re-examination even of the same questions between the same parties, if in the interval the material facts have so changed or such new events have occurred as to alter the legal rights or relations of the litigants.

(Punctuation and footnote omitted.) *Stover v. Tipton*, 252 Ga. App. 427, 428 (555 SE2d 151) (2001). In *Stover*, a property owner's prescriptive easement claim was not barred by prior litigation involving boundaries, because the neighbor did not block access until after that litigation ended. Here, there is no indication that any question about the validity of this easement existed at the time of the litigation between John Marshall and Anvil. Further, Parking Deck did not seek to bar Anvil from using the deck until after the litigation between John Marshall and Anvil ended.

In addition to the judgment in the prior case between John Marshall and Anvil, the parties entered into an agreement after the judgment was filed. That agreement acknowledges, among other things, the continued validity of the terms of the parties' Purchase and Sale Agreement, which includes the Reciprocal Easement Agreement. John Marshall therefore acknowledged that the sale included ease-

ment rights in the deck; in fact, Anvil filed a third lawsuit against John Marshall while this suit was pending and sought by consent judgment to have a copy of the easement recorded in lieu of the missing original.[1]

"Land previously burdened with an easement is not freed by a subsequent conveyance of the land unless the purchaser takes without notice of the easement and is a purchaser for value." *Webster v. Snapping Shoals Elec. Membership Corp.*, 176 Ga. App. 265, 266 (1) (a) (335 SE2d 637) (1985).

Parking Deck, LLC was fully aware of 1430's easement against the property when it bought the deck, because John Marshall, which granted the easement, was Parking Deck's only member at the time of the purchase. The fact that another entity subsequently purchased John Marshall's membership in Parking Deck is irrelevant, because the property owner is the limited liability company, not the members of the limited liability company. For these reasons, the trial court did not err in concluding that the issue of Anvil's easement rights in the parking deck was not res judicata.

3. Parking Deck argues that the trial court erred in granting summary judgment to Anvil because genuine issues of material fact remain as to whether Anvil is entitled to the easement. Anvil has submitted evidence showing that John Marshall signed the Purchase and Sale Agreement that made the grant of a parking easement a term of sale; that John Marshall and Anvil signed a Reciprocal Easement Agreement; and that John Marshall and Anvil signed a subsequent agreement following their litigation that reaffirmed the terms of the sale. Parking Deck argues that the affidavit of former John Marshall dean Robert D'Agostino creates an issue of fact. D'Agostino states that the Reciprocal Easement Agreement was executed in anticipation of closing the sale of 1430, but was never delivered because the building did not close. However, the prior litigation between John Marshall and Anvil established that the sale did take place, and the subsequent agreement between the parties reaffirmed the terms of the sale. Parking Deck has not demonstrated the existence of a genuine issue of material fact, and the trial court did not err in granting summary judgment to Anvil.

4. In light of our opinion set forth above, we need not address Parking Deck's argument that the trial court misinterpreted the judgment in the previous litigation between John Marshall and Anvil.

---

[1] While the record contains no order, the parties agree that a judgment in that case was issued but subsequently set aside. That action was consolidated with this one.

*Judgment affirmed. Ruffin, P. J., and Pope, Senior Appellate Judge, concur.*

DECIDED DECEMBER 17, 2002.

*Weinstock & Scavo, Michael Weinstock, Richard J. Capriola, Jennifer E. Butler*, for appellant.
*Philip S. Coe*, for appellee.